## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DENNIS RADCLIFF )<br><br>              Plaintiff, )<br><br>     vs. )<br><br>AMERICAN FUNDING, INC.; )<br>PERFORMANCE CREDIT )<br>CORPORATION, f/k/a )<br>ENCORE CREDIT CORPORATION; )<br>BEAR STERNS RESIDENTIAL )<br>MORTGAGE CORPORATION; )<br>LASALLE NATIONAL BANK )<br>ASSOCIATION, AS TRUSTEE FOR )<br>CERTIFICATEHOLDERS OF BEAR )<br>STEARNS ASSET BACKED )<br>SECURITIES I LLC, ASSET-BACKED )<br>CERTIFICATES, SERIES 2007-HE7; )<br>EMC MORTGAGE CORPORATION; )<br>MORTGAGE ELECTRONIC SYSTEMS, )<br>INC.; and DOES 1-5, )<br>                                                  )<br>              Defendants. ) | ```<br>FILED: APRIL 7, 2008<br>08CV1979          TG<br>JUDGE DER-YEGHIAYAN<br>MAGISTRATE JUDGE BROWN<br>```<br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY DEMAND** |

## COMPLAINT

### INTRODUCTION

1.     Plaintiff brings this action against a "subprime" mortgage lender, its assignees and a mortgage broker to secure redress for predatory lending practices in violation of the Truth in Lending Act ("TILA") and TILA's implementing regulations; the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS Sect. 505/2, and the Illinois Interest Act, 815 ILCS 205/4(2)(a).

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. Sects. 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental) and 15 U.S.C. Sect. 1601, et seq. ("TILA").

3.     Defendants transact business in the District and are deemed to reside here.

## PARTIES

4.     Plaintiff Dennis Radcliffe owns and resides in a home located at 13523 West Oakwood Court, Homer Glen, Illinois 60491.  He is an ordinary consumer.

5.     Defendant American Funding, Inc. ("American Funding") is an Illinois corporation with its principal offices at 5800-A North Lincoln Avenue, Chicago, IL, 60659.  It does business throughout the Chicago metro area.  It is engaged in the business of a mortgage broker.

6.     Defendant Performance Credit Corporation, formerly known as Encore Credit Corp. ("Encore"), is a corporation chartered under the laws of California, with principal offices located at 1833 Alton Parkway, Irvine, CA, 92606.  It does business in Illinois.  Its registered agent and office are National Registered Agents, Inc., 200 West Adams, Chicago, Illinois, 60604.

7.     Encore is or was engaged in the business of originating sub-prime mortgage loans.  Encore originated more than 26 mortgage loans in 2007.  On information and belief, Encore is or was a subsidiary or affiliate of defendant Bear Stearns.

8.     Bear Stearns Residential Mortgage Corporation ("Bear Stearns") is a Delaware corporation that does business in Illinois.  It has corporate offices located at 9201 East Mountain View Road, Suite 210, Scottsdale, AZ, 85258.  Bear Stearns is engaged in the business

of originating sub-prime mortgage loans.  It originated more than 26 mortgage loans in 2007.  On information and belief, Bear Sterns is the current beneficial owner of plaintiff's loan.

9.       Defendant LaSalle Bank National Association ("LaSalle"), as Trustee for Certificate Holders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE-7 is a national bank with headquarters located at 135 South LaSalle Street, Chicago, IL, 60603.  It does business in Illinois.  LaSalle is engaged in the business of holding title, as trustee, to subprime mortgage loans.  On information and belief, it is the current legal owner of plaintiff's loan.   LaSalle is now a subsidiary of Bank of America.

10.       Defendant EMC Mortgage Corporation ("EMC") is a Delaware corporation with corporate headquarters located at 2780 Lake Vista Drive, Lewisville, TX, 75067-3884.  It does business in Illinois.  Its registered agent and office are CT Corporation System, 208 South LaSalle Street, Suite #814, Chicago, IL 60604.   EMC is the current servicer of plaintiff's loan.  To the extent that EMC is merely the servicer of plaintiff's loan, it is named as a necessary party only.  On information and belief, EMC was or is a subsidiary or affiliate of defendants Encore and/or Bear Stearns.

11.       Defendant Mortgage Electronic Registration Systems, Inc., ("MERS") is a Delaware corporation that does business in Illinois.  Its registered agent and office are CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, IL 60604.  It is engaged in the business of holding legal title to mortgages, as nominee.  It is named as a necessary party only.

12.       If LaSalle or Bear Stearns are not the present owners of plaintiff's loan, as alleged, the current actual owner(s) is/are named herein as Does 1-5.  Ownership of such loans is not a matter of public record.

3

## FACTS

13.     Prior to July 26, 2007, plaintiff phoned defendant American Funding in response to an advertisement the latter had run in the <u>Chicago Sun-Times</u>.

14.      Plaintiff's call was routed to "Lilly," who took information for a loan application and ran his credit.  Lilly then informed plaintiff that he qualified for a loan at an interest rate of 7.0% fixed for 30 years and that he would be able to draw out equity in the amount of $70,000 from the proceeds of the loan.

15.     Plaintiff sought a loan because he needed $70,000 in working capital for his business, a start-up bio-fuel company.

16.     Shortly after plaintiff's initial call, an appraiser came to plaintiff's home and performed an appraisal.  Several days later, plaintiff called Lilly to learn the results of the appraisal.  She told him that the appraisal came back at $581,000 and said, "We have plenty of equity."  Plaintiff asked a copy of the appraisal.  Lilly agreed, but one was never provided to plaintiff.

17.     Lilly and American Funding arranged for a loan from defendant Encore or Bear Stearns in the amount of $481,500.  (Page 2 of the HUD-1 Settlement Statement (<u>Exhibit B</u>) identifies defendant Bear Stearns as receiving some of the closing fees that would normally be received by the creditor, while page 1 of the HUD-1 and the Mortgage (Exhibit A) identify Encore as the lender.)

18.     Plaintiff needed and used the loan for personal, family and household purposes.

19.     Plaintiff never met Lilly in person.  Most of the time, she did not return his phone calls.

20.    Plaintiff received no preliminary disclosures whatsoever in the mail or by other means prior to the closing for the loan.  This included, but was not limited to, a Good Faith Estimate, a preliminary TILA Disclosure Statement and required disclosures relating to an adjustable rate loan program.

21.    Plaintiff also never received any notification of changes in the loan terms that Lilly quoted or promised him, as required by Illinois law.

22.    American Funding arranged for closing to occur on or about July 26, 2007.  The loan was closed in plaintiff's home, not at 6600 North Lincoln Avenue, as represented on the HUD-1 Settlement Statement (Exhibit B).  Lilly was not present.

23.    At closing, plaintiff noticed that the loan terms had changed.  He called Lilly but was told she was busy.  He also inquired of the closer, who told him "I'm just a closer."

24.    The loan closer, on information and belief an employee of Cambridge Title Company ("Cambridge Title"), Encore's closing agent for plaintiff's transaction, did not provide plaintiff with any copies of any of the documents he signed at closing on or about July 26, 2007.  Plaintiff signed them, and the closer took them away.  The closer promised to mail, or have American Funding mail, a copy of the closing documents.  Plaintiff never received any copies.

25.    At no time subsequently did any defendant ever provide plaintiff with a copy of any of the closing documents.

26.    Eight months later, in March, 2007, in response to plaintiff's third request for a copy of the documents he signed, Cambridge Title faxed to plaintiff poor-quality copies of: two pages of the recorded mortgage (Exhibit A); the HUD-1 Settlement Statement (Exhibit B);

an Escrow Disbursement Agreement (Exhibit C); and an ALTA Loan and Extended Coverage Owners Policy Statement (Exhibit D).

27.     On information and belief, Cambridge Title contacted Lilly at American Funding assist plaintiff in getting a copy of the documents, and Lilly refused to cooperate.

28.     At no time was plaintiff ever provided with a TILA Disclosure Statement (preliminary or final) or with any copies of the federal Notice of Right to Cancel.

29.     Because plaintiff was not provided with any closing documents to keep, he did not have a meaningful opportunity to review, comprehend and deliberate on the terms of the loan he was promised and that he signed for.

30.     On information and belief, contrary to the terms promised Lilly and American Funding arranged for a "2/28" adjustable- rate loan with a starting interest rate of 10.15%.   The interest rate may increase beginning in August, 2009.  On the first change date, the rate can increase to as high as 13.15%.  Thereafter, it can increase by as much as 1% in every six-month period.  The rate can reach as high as 16.15%.

31.     On information and belief, contrary to what was promised plaintiff only actually received $19,356.48 in "cash out" from the transaction (Exhibit B, line 303).  This affected plaintiff's business, which in turn affected his ability to pay the mortgage on his home.

32.     In addition to receiving $1,840 in direct broker compensation from plaintiff, Lilly and American Funding also received $2,407.50 in additional compensation in the form of a yield spread premium ("YSP") paid by Encore (Exhibit B).  The YSP was paid and received for the purpose of increasing plaintiff's finance charge above the finance charge that he qualified for, as determined by his objective credit qualifications.

33.     Plaintiff qualified for better loan terms than he received from Lilly, American Funding and Encore/Bear Stearns.

34.     The interest rate, the adjustable rate loan program, and the actual amount of "cash out" were not disclosed to plaintiff.

35.     LaSalle has initiated a foreclosure action against plaintiff in Will County, Illinois.  It was unable to even attach a copy of the Promissory Note for the loan to its complaint; instead, it attached a "Lost Document Affidavit," which is legally insufficient.

36.     Subsequent to closing, servicing of the loan was transferred to defendant EMC.  As servicer, EMC claims certain rights in plaintiff's loan, including the right to receive payments, report to credit bureaus and to initiate or direct the initiation of foreclosure as a means of enforcing payment.  It is, therefore, named as a necessary party.

37.     The mortgage was in favor of defendant MERS.  As nominee, it holds title to plaintiff's mortgage and is, therefore, a necessary party.

38.     Subsequent to closing, Encore assigned ownership of the loan to LaSalle and Bear Stearns.  In the event LaSalle does not currently hold legal title to plaintiff's loan, as trustee, or that Bear Stearns is not the beneficial owner of plaintiff's loan, the actual owner(s) is/are named as Does 1-5.

39.     Because he did not receive copies of any closing documents, plaintiff may seek leave to amend his complaint based upon documents and information he obtains for the first time through discovery.

## COUNT I – TRUTH IN LENDING ACT – INDIVIDUAL CLAIM

40.     Plaintiff incorporates paragraphs 1-39.  This count is against Encore and Bear Stearns.  EMC, as servicer, and MERS, as nominee, are named as necessary parties only.

## **RIGHT TO RESCIND**

41.    Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. Sect. 1635 and 12 C.F.R. Sect. 226.23.  Sect. 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f) Exempt transactions. The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

42.    In connection with the loan, Encore and/or Bear Sterns or its agent failed to provide plaintiff with any financial disclosures whatsoever, in violation of 15 U.S.C. Sect. 1637, 12 C.F.R. Sect. 226.18 and the corresponding sections of the Official Federal Reserve Board ("FRB") Commentary on Regulation Z.  Defendants did not provide plaintiff with a preliminary or a final TILA Disclosure Statement.

43.    In addition, defendants failed to provide plaintiff with any federal Notice of Right to Cancel forms, in violation of 12 C.F.R. Sect. 226.23(b) above.

44.    Either violation alone is sufficient to confer on plaintiff the extended, three-year right to rescind the loan.

45.    Plaintiff sent notification to defendants of his intent to rescind the loan (Exhibit E).

9

46.    The loan has not been rescinded.

47.    Under 15 U.S.C. Sect. 1641(c), the right to rescind may be exercised against "any assignee."

48.    In addition, 15 U.S.C. Sect. 1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.    A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

b.    Statutory damages for the underlying violations;

c.    Actual damages plaintiff suffered for defendants' failure to disclose the terms of the loan;

d.    If appropriate, statutory damages for failure to rescind;

e.    Attorney's fees, litigation expenses and costs; and

f.    Such other or further relief as the Court deems appropriate.

## COUNT II - ILLINOIS CONSUMER FRAUD ACT

49.    Plaintiff incorporates paragraphs 1-39.  This claim is against "Lilly" and American Funding.  On information and belief, Lilly was and is an agent of American Funding.

50.     Defendants violated §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by engaging unfair and/or deceptive practices and conduct toward plaintiff, including but not limited to the following.

51.     Defendants engaged in bait-and-switch sales tactics with respect to the terms of plaintiff's loan.

52.     Defendants misrepresented or concealed the loan terms plaintiff would receive.

53.     This unfair and deceptive conduct was facilitated by defendants not providing any (a) preliminary disclosures of the loan terms, including the adjustable rate feature of the loan (b) written notification of a change in loan terms, including but not limited to the amount of "cash out" plaintiff would actually receive or (c) copies of the closing documents plaintiff signed, so that he could have an opportunity to review and study the loan terms either prior to closing or within the three-day, federal rescission period following closing.

54.     Disclosures were not provided so that plaintiff would not cancel the transaction either before or after closing.

55.     Lilly and American Funding received greater profits from plaintiff's transaction because they increased the interest rate beyond what plaintiff qualified for and/or because they put him in an adjustable rate loan program.

56.     Defendants engaged in such conduct in the course of trade and commerce.

57.     Defendants engaged in such conduct with the intent that plaintiff rely on its deception.

58.     Defendants engaged in such conduct with the intent to injure plaintiff.

59.     Plaintiff was damaged as a result.

60.    Defendants' conduct caused plaintiff's injuries.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of

plaintiff and against defendants for:

a.    Compensatory, actual, punitive and other appropriate damages;

b.    Attorney's fees, litigation expenses and costs.

c.    Such other or further relief as the Court deems appropriate.

## COUNT III – ILLINOIS INTEREST ACT

61.     Plaintiffs incorporate paragraphs 1-39.  This count is against Encore and

Bear Stearns.

62.    On information and belief, the note recites that it is governed by the

Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. Sect. 3802 ("AMTPA").

63.    Otherwise the note would violate  Sect. 4(2)(a) of the Illinois Interest Act,

815 ILCS 205/4(2)(a), which provides:

**Whenever the rate of interest exceeds 8% per annum on any written contract, agreement or bond for deed providing for the installment purchase of residential real estate, or on any loan secured by a mortgage on residential real estate, it shall be unlawful to provide for a prepayment penalty or other charge for prepayment.**

64.    The AMTPA requires that loans be made in compliance with regulations

issued by the Office of Thrift Supervision ("OTS"), successor to the Federal Home Loan Bank

Board.  12 U.S.C. Sect. 3803(a)(3).

65.    The OTS regulations, 12 C.F.R. Sect. 560.220, condition a lender's rights

under AMTPA upon compliance with 12 C.F.R. Sect. 560.210, which provides that a lender

"must provide the initial disclosures described at 12 C.F.R. Sect 226.19(b) and the adjustment

notices described at 12 C.F.R. Sect. 226.20(c) for variable rate transactions, as described in those regulations."

66.    12 C.F.R. Sect. 226.19, part of Federal Reserve Board Regulation Z, provides:

**SECTION 226.19    Certain Residential Mortgage Transactions**

**(a)    (1) <u>Time of Disclosures.</u>**

**In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601, et seq.) the creditor shall make good faith estimates of the disclosures required by section 226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.**

**(1) <u>Redisclosure required</u>.  If the annual percentage rate in the consummated transaction varies from the annual percentage rate disclosed under section 226.18(e) by more than 1/8 of 1 percentage point in a regular transaction or more than 1/4 of 1 percentage point in an irregular transaction, as defined in Section 226.22, the creditor shall disclose the changed terms no later than consummation or settlement.**

**(b)    <u>Certain variable-rate transactions.</u>[fn]45a  If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier:[fn]45b**

**(1)    The booklet titled <u>Consumer Handbook on Adjustable Rate Mortgages</u> published by the Board and the Federal Home Loan Bank Board, or a suitable substitute.**

**(2)    A loan program disclosure for each variable-rate program in which the consumer expresses an interest.  The following disclosures, as applicable, shall be provided:**

**(i)    The fact that the interest rate, payment, or term of the loan can change.**

(ii)    The index or formula used in making adjustments, and a source of information about the index or formula.

(iii)    An explanation of how the interest rate and payment will be determined, including an explanation of how the index is adjusted, such as by the addition of a margin.

(iv)    A statement that the consumer should ask about the current margin value and current interest rate.

(v)    The fact that the interest rate will be discounted, and a statement that the consumer should ask about the amount of the interest rate discount.

(vi)    The frequency of interest rate and payment changes.

(vii)    Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.

(viii)    An historical example, based on a $10,000 loan amount, illustrating how payments and the loan balance would have been affected by interest rate changes implemented according to the terms of the program.  The example shall be based upon index values beginning in 1977 and be updated annually until a 15-year history is shown.  Thereafter, the example shall reflect the most recent 15 years of index values.  The example shall reflect all significant loan program terms, such as negative amortization, interest rate carryover, interest rate discounts, and interest rate and payment limitations, that would have been affected by the index movement during the period.

(ix)    An explanation of how the consumer may calculate the payments for the loan amount to be borrowed based on the most recent payment shown in the historical example.

(x)    The maximum interest rate and payment for a $10,000 loan originated at the most recent interest rate shown in the historical example assuming the maximum periodic increases in rates and payments under the program; and the initial interest rate and payment for that loan.

(xi)    The fact that the loan program contains a demand feature.

14

**(xii)    The type of information that will be provided in notices of adjustments and the timing of such notices.**

**(xiii)    A statement that disclosure forms are available for the creditor's other variable-rate loan programs.**

**[fnn]45b  Disclosures may be delivered or placed in the mail not later than three business days following receipt of a consumer's application when the application reaches the creditor by telephone, or through an intermediary agent or broker.**

67.    For purposes of Sect. 226.19(b) above, on information and belief plaintiff's application for mortgage credit "reached" defendants when Lilly took plaintiff's information for an application in the initial phone call.  Neither the Consumer Handbook on Adjustable Rate Mortgages, nor any written disclosures relating to the adjustable loan program he would ultimately receive from defendants, were mailed or otherwise delivered to plaintiff prior to closing.

68.    Encore and/or Bear Stearns did not provide plaintiffs with the disclosures described in Sect. 226.19 until the July 26, 2007 closing, at the earliest.

69.     Encore and/or Bear Stearn's loan to plaintiff violated 4(2)(a) of the Illinois Interest Act, 815 ILCS 205/4(2)(a).

70.    Plaintiff is entitled to statutory damages as provided in Sect. 6 of the Interest Act, 815 ILCS 205/6.

WHEREFORE, plaintiff requests that the Court enter judgment in their favor and against defendants for:

a.    Statutory damages

b.    Attorney's fees, litigation expenses and costs of suit; and

c.    Such other or further relief as the Court deems proper.

Respectfully submitted,


s/Al Hofeld, Jr.
Al Hofeld, Jr.


Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project,
208 S. LaSalle Street, Suite #1650
Chicago, Illinois  60604
Phone - (312) 345-1004
Fax - (312) 346-3242
al@alhofeldlaw.com

## JURY DEMAND

Plaintiff demands trial by jury.


s/Al Hofeld, Jr.
Al Hofeld, Jr.

16

## <u>NOTICE OF LIEN</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

<u>s/Al Hofeld, Jr.</u>
Al Hofeld, Jr.


Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Project for Social Justice, Inc.
208 S. LaSalle Street, Suite #1650
Chicago, Illinois 60604
Phone - (312) 345-1004
Fax – (312) 346-3242
<u>al@alhofeldlaw.com</u>
<u>alhofeldlaw.com</u>

1

# EXHIBIT A

Return To:

Encore Credit
1833 Alton Parkway
Irvine, CA 92606

LAURIE MCPHILLIPS 18P R 20071297H5
Will County Recorder    Page 1 of 19

Prepared By:

Encore Credit
2211 Butterfield Road, Ste.
100
Downers Grove, IL 60515

LMR Date 09/11/2007    Time 12:06:30
Recording Fees:            30.75
IL Rental Hsng Support Prog: 10.00

**CAMBRIDGE TITLE COMPANY**
**400 Central Avenue**
**Northfield, IL 60093**

07-1554

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 100300410000240120

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 26, 2007,
together with all Riders to this document.
(B) "Borrower" is DENNIS RADCLIFF, UNMARRIED MAN.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

20823779                                                                              20823779

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3014 1/01

Page 1 of 15

18019

(D) "Lender" is Encore Credit

Lender is a Corporation
organized and existing under the laws of The State of Delaware.
Lender's address is 2211 Butterfield Road, Ste. 100, Downers Grove, IL 60515

(E) "Note" means the promissory note signed by Borrower and dated July 26, 2007
The Note states that Borrower owes Lender Four Hundred Eighty One Thousand Five
Hundred And Zero/100
Dollars
(U.S. $481,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 01, 2037

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider    [ ] Condominium Rider           [ ] Second Home Rider
- [ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
- [ ] V.A. Rider               [ ] Biweekly Payment Rider        [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

20823779

20823779

-6A(IL) (0010.01)          Page 2 of 15          Form 3014  1/01

# EXHIBIT B

**A. SETTLEMENT STATEMENT**

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

**B. Type of Loan**

| 1. □ FHA | 2. □ FmHA | 3. □ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| | | | 87-3854 | 39002279 | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| DENNIS RADCLIFF | | EROME CREDIT |
| 13525 WEST OAKWOOD COURT | | 2233 INTI WAY FIELD ROAD STE. (####) |
| HOMER GLEN, IL 40481 | | DOWNERS GROVE, IL 60515 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 13525 WEST OAKWOOD COURT | CAMBRIDGE TITLE CORPN | |
| HOMER GLEN, IL 60491 | Place of Settlement | I. Settlement Date |
| | 6020 W. LINCOLN AVE. | 07/25/07 |
| | MORTON, IL 60712 | POC: 07/23/07 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,795.48 | 403. | |
| 104. NEW FINANCED NATUR | 456,397.44 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes | to | 406. City/town taxes | to |
| 107. County taxes | to | 407. County taxes | to |
| 108. Assessments | to | 408. Assessments | to |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 462,193.52 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. Amounts Paid By or In Behalf of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 451,696.54 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes | to | 510. City/town taxes | to |
| 211. County taxes | to | 511. County taxes | to |
| 212. Assessments | to | 512. Assessments | to |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 451,898.93 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. Cash At Settlement From or To Borrower | | 600. Cash At Settlement To or From Seller | |
| 301. Gross amount due from borrower (line 120) | 462,193.52 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 451,899.80 | 602. Less reductions amount due seller (line 520) | |
| 303. CASH ☐ TO ☐ BORROWER | 15,795.48 | 603. CASH ☐ TO ☐ SELLER | 0.00 |

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT    SETTLEMENT STATEMENT**

## L. SETTLEMENT CHARGES:    FILE #: 87-1594

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSION** based on price $ @ % = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at Settlement | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | P.O.C. | | |
| 801. Loan Origination Fee % | | | |
| 802. Loan Discount % | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to    AMERICAN FUNDING | | 18.00 | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mtg. Ins. Application Fee to | | | |
| 807. | | | |
| 808. UNDERWRITING FEE    CREDIT ORBIT | | 48.00 | |
| 809. PROCESSING FEE    AMERICAN FUNDING | | 552.00 | |
| 810. TOTAL POINTS PREMIUM    PAID TO FUND BY AMERICAN FUNDING | | | |
| 811. WIRED APPLICATION FEE    AMERICAN FUNDING | | | |
| 812. COURIER FEE    AMERICAN FUNDING | | 65.00 | |
| 813. TAX SERVICE FEE    BEAR STEARNS RESIDENTIAL MORTGAGE | | 40.00 | |
| 814. FLOOD CERT FEE    CREDIT ORBIT | | 7.00 | |
| 815. UNDERWRITING FEE    BEAR STEARNS RESIDENTIAL MORTGAGE | | 475.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from 02/26/07 to 04/01/07    @ $    per day    Days | | 115.50 | |
| 902. Mortgage Insurance Premium for to | | | |
| 903. Hazard Insurance Premium for 1 year to AMERICAN FAMILY INSURANCE | | 660.10 | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER for** | | | |
| 1001. Hazard Insurance    mo. @$    /mo. | | | |
| 1002. Mortgage Insurance    mo. @$    /mo. | | | |
| 1003. City property taxes    mo. @$    /mo. | | | |
| 1004. County property taxes    mo. @$    /mo. | | | |
| 1005. Annual Assessments    mo. @$    /mo. | | | |
| 1006.    mo. @$    /mo. | | | |
| 1007.    mo. @$    /mo. | | | |
| 1008. | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| (includes above items No.) | | | |
| 1108. Title Insurance to    CHICAGO TITLE COMPANY | | 385.00 | |
| (includes above items No.) | | | |
| 1109. Lender's coverage $    250.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. | | | |
| 1112. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees    Deed $    Mortgage $    Releases $ | 60.00 | | |
| 1202. City/county tax/stamps    Deed $    Mortgage $ | | | |
| 1203. State tax/stamps    Deed $    Mortgage $ | | | |
| 1204. CITY OF CHICAGO    Deed $    Mortgage $ | | | |
| 1205. ASSESSMENT OF REFINANCE RECORDING FEE | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1300. Survey to | | | |
| 1301. Pest inspection to | | | |
| 1302. MODEL MORTGAGE SERVICING    100% CREDIT TOWARDS | | 45.00 | |
| 1303. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 703 and 904, Sections J and K) | | 3,705.00 | 0.00 |

Dennis Weddell

Anna C. Fante    02-26-07

form HUD-1    REV. HUD-1 (3/86)

# EXHIBIT C

**CAMBRIDGE TITLE COMPANY**
400 CENTRAL AVENUE
NORTHFIELD, IL 60093
(847) 446-9000

ESCROW DISBURSEMENT AGREEMENT

BUYERS: DENNIS RADCLIFF        SELLERS:

PROPERTY ADDRESS:    13525 WEST OAKWOOD COURT, HOMER GLEN, IL 60491

We the Buyer direct you to make disbursements for this transaction pursuant to the attached HUD-1 Settlement Statement.

We understand and agree that CAMBRIDGE TITLE COMPANY is only acting as agent for the lending institution, and does not represent either the Seller or the Buyer as an attorney or in any other way.

We understand that if this statement is signed by an attorney, the attorney affirmatively warrants that he/she has the authority to receive copies of the attached Settlement Statement to the attorney is delivery to his client.

The Buyer directs you to make the disbursements only when CAMBRIDGE TITLE COMPANY is able to issue an ALTA owners title policy insuring the fee simple title of the Buyer, subject only to the following: (a) general real estate taxes for 2006 and subsequent years; (b) special exceptions Schedule B (); (c) the mortgage made by the Buyer in this transaction. The Buyer will pay the $0 escrow fee for this service.

The parties, if requested by CAMBRIDGE TITLE COMPANY, will promptly cooperate and adjust for clerical errors, any documents executed as part of this transaction.

In order to induce CAMBRIDGE TITLE COMPANY to accept the deposit of uncertified funds for the closing of this transaction, the party wishing to make the deposit of uncertified funds hereby indemnifies and holds harmless CAMBRIDGE TITLE COMPANY for all loss or damage, including reasonable attorneys' fees expended in enforcing its rights under said indemnification and hold harmless, sustained by reason of CAMBRIDGE TITLE COMPANY accepting said uncertified funds.

Sellers/Owners                    Buyers

_____           _____

_____           _____

Date:  July 26th, 2007

# EXHIBIT D

# CAMBRIDGE TITLE COMPANY

6600 Lincoln Ave., Suite 200, Lincolnwood, IL 60712
(847) 410-0430 • Fax (847) 410-0435

## ALTA LOAN AND EXTENDED COVERAGE OWNERS POLICY STATEMENT

Commitment No.: _____     Date: _____

The undersigned hereby certifies with respect to the land described in the above commitment:

1. That, to the best knowledge and belief of the undersigned, no contracts for the furnishing of any labor or material to the land or the improvements thereon, and no security agreements or leases in respect to any goods or chattels that have or are to become attached to the land or any improvements thereon as fixtures, have been given or are outstanding that have not been fully performed and satisfied; and that there are no unrecorded contracts to purchase the lands and that there are no unrecorded leases in which the land is subject, except as listed below; and that if any leases are listed below, they contain no options to purchase, rights of renewal, or other special provisions, except as noted below (exclusive of contracts, term "none").

*(list leases/options hereof if necessary)*

2. That, in the event that the undersigned is a mortgagor in a mortgage to be insured under a loan policy to be issued pursuant to the above commitment, the mortgage and the principal obligation it secures are good and valid and free from all defenses; that any person purchasing the mortgage and the obligation it secures, or otherwise acquiring any interest therein, may do so in reliance upon the truth of the matters herein recited and that the certification is made for the purpose of better enabling the holder or holders, from time to time, of the above mortgage and obligations to sell, pledge or otherwise dispose of the same freely at any time, and to insure the purchaser or pledgee thereof against any defenses thereto by the mortgagor or the mortgagor's heirs, personal representatives or assigns.

The undersigned makes the above statements for the purpose of inducing Cambridge Title Company to issue its owners or loan policy pursuant to the above commitment.

I N D I V I D U A L
_____

*Dennis Radcliff*

_____

CORPORATION

IN WITNESS WHEREOF, _____
has caused these presents to be
signed by its _____ President and attested by its _____
Secretary under its corporate seal on the above date.
By: _____ President
Attest: _____ Secretary

IN WITNESS WHERE OF, _____
has caused these presents to be
signed by its _____ President and attested by its _____
Secretary under its corporate seal the above date.
By: _____ President
Attest: _____ Secretary

TRUSTEE
The above statements are made by _____
not personally but as Trustee under the trust agreement
known as Trust No. _____, on the above written authority
and direction of the beneficiaries under the trust.

_____ Seal

The above statements are made by _____
not personally but as Trustee under the trust agreement
known as Trust No. _____, on the above written authority
and direction of the beneficiaries under the trust.

_____ Seal

(individual)

This certify that no survey was furnished or no charged name is available.

**LENDERS DISBURSEMENT STATEMENT**

The undersigned hereby certifies that the proceeds of the loan secured by the mortgage to be insured under the loan policy to be issued pursuant to the above commitment, were fully disbursed to or on the order of the mortgagor on _____; and, to the best knowledge and belief of the undersigned, the proceeds are not to be used to finance the making of future improvements or repairs on the land. You are hereby authorized to date down the above commitment to the date of said disbursement.

_____     _____

# EXHIBIT E

**LAW OFFICES OF AL HOFELD, JR., LLC**
208 S. LaSalle Street, Suite #1650
Chicago, Illinois 60604
Phone - 312-345-1004
Fax - 312-346-3242 (FAX)
Email: al@alhofeldlaw.com

March 31, 2008

**BY REGULAR MAIL:**

EMC Mortgage Corporation
2780 Lake Vista Drive
Lewisville, TX 75029-3150

Performance Credit Corporation,
f/k/a Encore Credit
1833 Alton Parkway
Irvine, CA 92606

**BY HAND DELIVERY:**

EMC Mortgage Corporation
C/o CT Corporation System,
208 South LaSalle Street, Suite 814
Chicago, IL 60604

Performance Credit Corporation,
f/k/a Encore Credit
C/o National Registered Agents, Inc.
200 West Adams,
Chicago, IL 60604

Mortgage Electronic Registration Systems, Inc.
C/o registered agent,
CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, IL 60604

Re:   Notice of TILA rescission, claim and lien for Dennis Radcliff, 13523
West Oakwood Court, Home Glen, IL 60491; loan of July 26, 2007,
originated by Encore Credit

Ladies/Gentlemen:

1

The above client hereby gives notice that he rescinds the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above client to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to your obligation under 15 U.S.C. §1641(f)(2).

Finally, please provide a complete account history so that we may compute the appropriate tender amount.

Sincerely,

Al Hofeld, Jr.

Cc:    client

Richard M. Rosenbaum
Pierce & Associates
1 North Dearborn
Chicago, IL 60602

2

I, Al Hofeld, Jr., under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the listed addressees on March 31, 2008.

Al Hofeld, Jr.

3