IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DENNIS RADCLIFF,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  2008 C 1979 |
| | ) | |
| **AMERICAN FUNDING, INC.;** | ) | |
| **PERFORMANCE CREDIT CORPORATION,** | ) | Judge Der-Yeghiayan |
| **f/k/a ENCORE CREDIT CORPORATION;** | ) | |
| **BEAR STERNS RESIDENTIAL MORTGAGE** | ) | Magistrate Judge Brown |
| **CORPORATION; LASALLE NATIONAL** | ) | |
| **BANK ASSOCIATION, AS TRUSTEE FOR** | ) | |
| **CERTIFICATE HOLDERS OF BEAR** | ) | |
| **STEARNS ASSET BACKED SECURITIES I** | ) | |
| **LLC, ASSET-BACKED CERTIFICATES,** | ) | |
| **SERIES 2007-HE7; EMC MORTGAGE** | ) | |
| **CORPORATION; MORTGAGE ELECTRO-** | ) | |
| **NIC SYSTEMS, INC.; and DOES 1-5,** | ) | |
| | ) | **JURY DEMAND** |
| Defendants. | ) | |

## ANSWER OF AMERICAN FUNDING, INC.

Now come the defendants, American Funding, Inc. ("American Funding"), by and through its attorney, Carlton Odim of Odim Law Offices, and answering the complaint of the plaintiff, states as follows:

## INTRODUCTION

1.    Plaintiff brings this action against a "subprime" mortgage lender, its assignees and a mortgage broker to secure redress for predatory lending practices in violation of the Truth in Lending Act ("TILA") and TILA's implementing regulations; the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS Sect. 505/2, and the Illinois Interest Act, 815 ILCS 205/4(2)(a).

**ANSWER:** American Funding neither admits nor denies this paragraph of the complaint, because it does not call for an admission or denial.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. Sects. 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental) and 15 U.S.C. Sect. 1601, et seq. ("TILA").

**ANSWER:** American Funding admits the allegations contained in this paragraph of the complaint.

3.     Defendants transact business in the District and are deemed to reside here.

**ANSWER:** American Funding admits the allegations contained in this paragraph of the complaint that it transacts business in the District and is deemed to reside here. American Funding has insufficient information to either admit or deny to remaining allegations contained in this paragraph of the complaint.

## PARTIES

4.     Plaintiff Dennis Radcliffe owns and resides in a home located at 13523 West Oakwood Court, Homer Glen, Illinois 60491. He is an ordinary consumer.

**ANSWER:** American Funding admits the allegations contained in this paragraph of the complaint that Plaintiff Dennis Radcliffe owns and resides in a home located at 13523 West Oakwood Court, Homer Glen, Illinois 60491. American Funding neither admits nor denies the allegation that "He is an ordinary consumer", because American Funding does not know the meaning of "ordinary customer."

5.     Defendant American Funding, Inc. ("American Funding") is an Illinois corporation with its principal offices at 5800-A North. Lincoln Avenue, Chicago, IL, 60659. It does business throughout the Chicago metro area. It is engaged in the business of a mortgage broker.

**ANSWER:** American Funding admits the allegations contained in this paragraph of the complaint.

6.     Defendant Performance Credit Corporation, formerly known as Encore Credit Corp. ("Encore"), is a corporation chartered under the laws of California, with principal offices located at 1833 Alton Parkway, Irvine, CA, 92606. It does business in Illinois. Its registered agent and office are National Registered Agents, Inc., 200 West Adams, Chicago, Illinois, 60604.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

7.      Encore is or was engaged in the business of originating sub-prime mortgage loans. Encore originated more than 26 mortgage loans in 2007. On information and belief, Encore is or was a subsidiary or affiliate of defendant Bear Steams.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

8.      Bear Steams Residential Mortgage Corporation ("Bear Stearns") is a Delaware corporation that does business in Illinois. It has corporate offices located at 9201 East Mountain View Road, Suite 210, Scottsdale, AZ, 85258. Bear Steams is engaged in the business of originating sub-prime mortgage loans. It originated more than 26 mortgage loans in 2007. On information and belief, Bear Stems is the current beneficial owner of plaintiff's loan.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

9.      Defendant LaSalle Bank National Association ("LaSalle"), as Trustee for Certificate Holders of Bear Steams Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE-7 is a national bank with headquarters located at 135 South LaSalle Street, Chicago, IL, 60603. It does business in Illinois. LaSalle is engaged in the business of holding title, as trustee, to subprime mortgage loans. On information and belief, it is the current legal owner of plaintiff's loan. LaSalle is now a subsidiary of Bank of America.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

10.     Defendant EMC Mortgage Corporation ("EMC") is a Delaware corporation with corporate headquarters located at 2780 Lake Vista Drive, Lewisville, TX, 75067-3884. It does business in Illinois. Its registered agent and office are CT Corporation System, 208 South LaSalle Street, Suite #814, Chicago, IL 60604. EMC is the current servicer of plaintiff's loan. To the extent that EMC is merely the servicer of plaintiff's loan, it is named as a necessary party only. On information and belief, EMC was or is a subsidiary or affiliate of defendants Encore and/or Bear Stearns.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

11.     Defendant Mortgage Electronic Registration Systems, Inc., ("MERS") is a Delaware corporation that does business in Illinois. Its registered agent and office are CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, IL 60604. It is engaged in the business of holding legal title to mortgages, as nominee. It is named as a necessary party only.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

12.     If LaSalle or Bear Steams are not the present owners of plaintiffs loan, as alleged, the current actual owner(s) is/are named herein as Does 1-5. Ownership of such loans is not a matter of public record.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

## FACTS

13.     Prior to July 26, 2007, plaintiff phoned defendant American Funding in response to an advertisement the latter had run in the Chicago Sun-Times.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

14.     Plaintiff's call was routed to "Lilly," who took information for a loan application and ran his credit. Lilly then informed plaintiff that he qualified for a loan at an interest rate of 7.0% fixed for 30 years and that he would be able to draw out equity in the amount of $70,000 from the proceeds of the loan.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

15.     Plaintiff sought a loan because he needed $70,000 in working capital for his business, a start-up bio-fuel company.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

16.     Shortly after plaintiff's initial call, an appraiser came to plaintiff's home and performed an appraisal. Several days later, plaintiff called Lilly to learn the results of the appraisal. She told him that the appraisal came back at $581,000 and said, "We have plenty of equity." Plaintiff asked a copy of the appraisal. Lilly agreed, but one was never provided to plaintiff.

4

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

17. Lilly and American Funding arranged for a loan from defendant Encore or Bear Stearns in the amount of $481,500. (Page 2 of the HUD-1 Settlement Statement (Exhibit B.) identifies defendant Bear Stearns as receiving some of the closing fees that would normally be received by the creditor, while page 1 of the HUD-1 and the Mortgage (Exhibit A) identify Encore as the lender.)

**ANSWER:** American Funding admits the allegations contained in this paragraph of the complaint.

18. Plaintiff needed and used the loan for personal, family and household purposes.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

19. Plaintiff never met Lilly in person. Most of the time, she did not return his phone calls.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

20. Plaintiff received no preliminary disclosures whatsoever in the mail or by other means prior to the closing for the loan. This included, but was not limited to, a Good Faith Estimate, a preliminary TILA Disclosure Statement and required disclosures relating to an adjustable rate loan program.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

21. Plaintiff also never received any notification of changes in the loan terms that Lilly quoted or promised him, as required by Illinois law.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

22. American Funding arranged for closing to occur on or about July 26, 2007. The loan was closed in plaintiff's home, not at 6600 North Lincoln Avenue, as represented on the HUD-1 Settlement Statement (Exhibit B). Lilly was not present.

**ANSWER:** American Funding admits that it arranged for closing to occur on or about July 26, 2007 and that Lilly was not present, but it denies the remaining allegations contained in this paragraph of the complaint.

23. At closing, plaintiff noticed that the loan terms had changed. He called Lilly but was told she was busy. He also inquired of the closer, who told him "I'm just a closer."

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

24. The loan closer, on information and belief an employee of Cambridge Title Company ("Cambridge Title"), Encore's closing agent for plaintiff's transaction, did not provide plaintiff with any copies of any of the documents he signed at closing on or about July 26, 2007. Plaintiff signed them, and the closer took them away. The closer promised to mail, or have American Funding mail, a copy of the closing documents. Plaintiff never received any copies.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

25. At no time subsequently did any defendant ever provide plaintiff with a copy of any of the closing documents.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

26. Eight months later, in March, 2007, in response to plaintiff's third request for a copy of the documents he signed, Cambridge Title faxed to plaintiff poor-quality copies of: two pages of the recorded mortgage (Exhibit A); the HUD-1 Settlement Statement (Exhibit B); an Escrow Disbursement Agreement (Exhibit C); and an ALTA Loan and Extended Coverage Owners Policy Statement (Exhibit D).

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

27. On information and belief, Cambridge Title contacted Lilly at American Funding assist plaintiff in getting a copy of the documents, and Lilly refused to cooperate.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

28.     At no time was plaintiff ever provided with a TILA Disclosure Statement (preliminary or final) or with any copies of the federal Notice of Right to Cancel.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

29.     Because plaintiff was not provided with any closing documents to keep, he did not have a meaningful opportunity to review, comprehend and deliberate on the terms of the loan he was promised and that he signed for.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

30.     On information and belief, contrary to the terms promised Lilly and American Funding arranged for a "2/28" adjustable- rate loan with a starting interest rate of 10.15%. The interest rate may increase beginning in August, 2009. On the first change date, the rate can increase to as high as 13.15%. Thereafter, it can increase by as much as 1% in every six-month period. The rate can reach as high as 16.15%.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

31.     On information and belief, contrary to what was promised plaintiff only actually received $19,356.48 in "cash out" from the transaction (Exhibit B, line 303). This affected plaintiff's business, which in turn affected his ability to pay the mortgage on his home.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

32.     In addition to receiving $1,840 in direct broker compensation from plaintiff, Lilly and American Funding also received $2,407.50 in additional compensation in the form of a yield spread premium ("YSP") paid by Encore (Exhibit B). The YSP was paid and received for the purpose of increasing plaintiff's finance charge above the finance charge that he qualified for, as determined by his objective credit qualifications.

**ANSWER:** American Funding admits receipt of $2,407.50 as a YSP, but denies the remaining allegations contained in this paragraph of the complaint.

33. Plaintiff qualified for better loan terms than he received from Lilly, American Funding and Encore/Bear Stearns.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

34. The interest rate, the adjustable rate loan program, and the actual amount of "cash out" were not disclosed to plaintiff.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

35. LaSalle has initiated a foreclosure action against plaintiff in Will County, Illinois. It was unable to even attach a copy of the Promissory Note for the loan to its complaint; instead, it attached a "Lost Document Affidavit," which is legally insufficient.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

36. Subsequent to closing, servicing of the loan was transferred to defendant EMC. As servicer, EMC claims certain rights in plaintiff's loan, including the right to receive payments, report to credit bureaus and to initiate or direct the initiation of foreclosure as a means of enforcing payment. It is, therefore, named as a necessary party.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

37. The mortgage was in favor of defendant MERS. As nominee, it holds title to plaintiff's mortgage and is, therefore, a necessary party.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

38. Subsequent to closing, Encore assigned ownership of the loan to LaSalle and Bear Stearns. In the event LaSalle does not currently hold legal title to plaintiff's loan, as trustee, or that Bear Stearns is not the beneficial owner of plaintiff's loan, the actual owner(s) is/are named as Does 1-5.

**ANSWER:** American Funding has insufficient knowledge to either admit or deny the allegations contained in this paragraph of the complaint.

39.     Because he did not receive copies of any closing documents, plaintiff may seek leave to amend his complaint based upon documents and information he obtains for the first time through discovery.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

## **COUNT I — TRUTH IN LENDING ACT — INDIVIDUAL CLAIM**

40.     Plaintiff incorporates paragraphs 1-39. This count is against Encore and Bear Stearns. EMC, as servicer, and MERS, as nominee, are named as necessary parties only.

**ANSWER:** American Funding incorporated its answers to paragraph 1-39, and states that no further responses are called for to this paragraph of the complaint.

## **RIGHT TO RESCIND**

41.     Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. Sect. 1635 and 12 C.F.R. Sect. 226.23. Sect. 226.23 provides:

(a) Consumer's right to rescind.

> (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (1) of this secfion.[fn]47

> (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

> (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice

> required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act [15 U.S.C. §1635(1)]
>
> (4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.
>
> (b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> > (1) The retention or acquisition of a security interest in the consumer's principal dwelling.
> >
> > (2) The consumer's right to rescind the transaction.
> >
> > (3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> >
> > (4) The effects of rescission, as described in paragraph (d) of this section.
> >
> > (5) The date the rescission period expires.
>
> (f) Exempt transactions. The right to rescind does not apply to the following:
>
> > (1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].
> >
> > (2) A credit plan in which a state agency is a creditor.

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

## **GROUNDS FOR RESCISSION**

42. In connection with the loan, Encore and/or Bear Stems or its agent failed to provide plaintiff with any financial disclosures whatsoever, in violation of 15 U.S.C. Sect. 1637, 12 C.F.R. Sect. 226.18 and the corresponding sections of the Official Federal Reserve Board ("FRB") Commentary on Regulation Z. Defendants did not provide plaintiff with a preliminary or a final TILA Disclosure Statement.

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

43. In addition, defendants failed to provide plaintiff with any federal Notice of Right to Cancel forms, in violation of 12 C.F.R. Sect. 226.23(b) above.

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

44. Either violation alone is sufficient to confer on plaintiff the extended, three-year right to rescind the loan.

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

45. Plaintiff sent notification to defendants of his intent to rescind the loan (Exhibit E).

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

46. The loan has not been rescinded.

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

47. Under 15 U.S.C. Sect. 1641(c), the right to rescind may be exercised against "any assignee."

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

48. In addition, 15 U.S.C. Sect. 1635(g) provides:

Additional relief

> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

WHEREFORE, American Funding respectfully requests that the court enter such relief as the court considers fair and just.

## COUNT II - ILLINOIS CONSUMER FRAUD ACT

49. Plaintiff incorporates paragraphs 1-39. This claim is against "Lilly" and American Funding. On information and belief, Lilly was and is an agent of American Funding.

**ANSWER:** American Funding incorporates its answers to paragraph 1-39. American Funding admits the remaining allegations contained in this paragraph of the complaint.

50. Defendants violated §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by engaging unfair and/or deceptive practices and conduct toward plaintiff, including but not limited to the following.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

51. Defendants engaged in bait-and-switch sales tactics with respect to the terms of plaintiff's loan.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

52. Defendants misrepresented or concealed the loan terms plaintiff would receive.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

53. This unfair and deceptive conduct was facilitated by defendants not providing any (a) preliminary disclosures of the loan terms, including the adjustable rate feature of the loan (b) written notification of a change in loan terms, including but not limited to the amount of "cash out" plaintiff would actually receive or (c) copies of the closing documents plaintiff signed, so that he

could have an opportunity to review and study the loan terms either prior to closing or within the three-day, federal rescission period following closing.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

54. Disclosures were not provided so that plaintiff would not cancel the transaction either before or after closing.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

55. Lilly and American Funding received greater profits from plaintiff s transaction because they increased the interest rate beyond what plaintiff qualified for and/or because they put him in an adjustable rate loan program.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

56. Defendants engaged in such conduct in the course of trade and commerce.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

57. Defendants engaged in such conduct with the intent that plaintiff rely on its deception.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

58. Defendants engaged in such conduct with the intent to injure plaintiff.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

59. Plaintiff was damaged as a result.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

60. Defendants' conduct caused plaintiffs injuries.

**ANSWER:** American Funding denies the allegations contained in this paragraph of the complaint.

WHEREFORE, American Funding respectfully requests that the court dismiss this count of the complaint, with an award of costs and attorneys fees to American Funding.

## COUNT III — ILLINOIS INTEREST ACT

61. Plaintiffs incorporate paragraphs 1-39. This count is against Encore and Bear Steams.

**ANSWER:** American Funding incorporated its answers to paragraph 1-39, and states that no further responses are called for to this paragraph of the complaint.

62. On information and belief, the note recites that it is governed by the Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. Sect. 3802 ("AMTPA").

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

63. Otherwise the note would violate Sect. 4(2)(a) of the Illinois Interest Act, 815 1LCS 205/4(2)(a), which provides:

> Whenever the rate of interest exceeds 8% per annum on any written contract, agreement or bond for deed providing for the installment purchase of residential real estate, or on any loan secured by a mortgage on residential real estate, it shall be unlawful to provide for a prepayment penalty or other charge for prepayment.

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

64. The AMTPA requires that loans be made in compliance with regulations issued by the Office of Thrift Supervision ("OTS"), successor to the Federal Home Loan Bank Board. 12 U.S.C. Sect. 3803(a)(3).

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

65. The OTS regulations, 12 C.F.R. Sect. 560.220, condition a lender's rights under AMTPA upon compliance with 12 C.F.R. Sect. 560.210, which provides that a lender "must provide the initial disclosures described at 12 C.F.R. Sect 226.19(b) and the adjustment notices described at 12 C.F.R. Sect. 226.20(c) for variable rate transactions, as described in those regulations."

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

66. 12 C.F.R. Sect. 226.19, part of Federal Reserve Board Regulation Z, provides:

SECTION 226.19 Certain Residential Mortgage Transactions

    (a)    (1) <u>Time of Disclosures</u>.

In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601, et seq.) the creditor shall make good faith estimates of the disclosures required by section 226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

(1)    <u>Redisclosure required</u>. If the annual percentage rate in the consummated transaction varies from the annual percentage rate disclosed under section 226.18(e) by more than 1/8 of 1 percentage point in a regular transaction or more than 1/4 of 1 percentage point in an irregular transaction, as defined in Section 226.22, the creditor shall disclose the changed terms no later than consummation or settlement.

(b)    <u>Certain variable-rate transactions</u>. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier: [fn]45b

    (1)    The booklet titled <u>Consumer Handbook on Adjustable Rate Mortgages</u> published by the Board and the Federal Home Loan Bank Board, or a suitable substitute.

    (2)    A loan program disclosure for each variable-rate program in which the consumer expresses an interest. The following disclosures, as applicable, shall be provided:

15

(i)     The fact that the interest rate, payment, or term of the loan can change.

(ii)    The index or formula used in making adjustments, and a source of information about the index or formula.

(iii)   An explanation of how the interest rate and payment will be determined, including an explanation of how the index is adjusted, such as by the addition of a margin.

(iv) A statement that the consumer should ask about the current margin value and current interest rate.

(v) The fact that the interest rate will be discounted, and a statement that the consumer should ask about the amount of the interest rate discount.

(vi) The frequency of interest rate and payment changes.

(vii) Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.

(viii) An historical example, based on a $10,000 loan amount, illustrating how payments and the loan balance would have been affected by interest rate changes implemented according to the terms of the program. The example shall be based upon index values beginning in 1977 and be updated annually until a 15-year history is shown. Thereafter, the example shall reflect the most recent 15 years of index values. The example shall reflect all significant loan program terms, such as negative amortization, interest rate carryover, interest rate discounts, and interest rate and payment limitations, that would have been affected by the index movement during the period.

(ix) An explanation of how the consumer may calculate the payments for the loan amount to be borrowed based on the most recent payment shown in the historical example.

(x) The maximum interest rate and payment for a $10,000 loan originated at the most recent interest rate shown in the historical example assuming the maximum periodic increases in rates and payments under the program; and the initial interest rate and payment for that loan.

>    (xi) The fact that the loan program contains a demand feature.
>
>    (xii) The type of information that will be provided in notices of adjustments and the timing of such notices.
>
>    (xiii) A statement that disclosure forms are available for the creditor's other variable-rate loan programs.
>
> [fitn145b Disclosures may be delivered or placed in the mail not later than three business days following receipt of a consumer's application when the application reaches the creditor by telephone, or through an intermediary agent or broker.

**ANSWER:** This claim is not against American Funding, therefore no response to this

paragraph of the complaint is called for.

67.    For purposes of Sect. 226.19(b) above, on information and belief plaintiff's application for mortgage credit "reached" defendants when Lilly took plaintiff s information for an application in the initial phone call. Neither the Consumer Handbook on Adjustable Rate Mortgages, nor any written disclosures relating to the adjustable loan program he would ultimately receive from defendants, were mailed or otherwise delivered to plaintiff prior to closing.

**ANSWER:** This claim is not against American Funding, therefore no response to this

paragraph of the complaint is called for.

68.    Encore and/or Bear Stearns did not provide plaintiffs with the disclosures described in Sect. 226.19 until the July 26, 2007 closing, at the earliest.

**ANSWER:** This claim is not against American Funding, therefore no response to this

paragraph of the complaint is called for.

69.    Encore and/or Bear Steam's loan to plaintiff violated 4(2)(a) of the Illinois Interest Act, 815 ILCS 205/4(2)(a).

**ANSWER:** This claim is not against American Funding, therefore no response to this

paragraph of the complaint is called for.

70.    Plaintiff is entitled to statutory damages as provided in Sect. 6 of the Interest Act, 815 ILCS 205/6.

**ANSWER:** This claim is not against American Funding, therefore no response to this paragraph of the complaint is called for.

WHEREFORE, American Funding respectfully requests that the court enter such relief as the court considers fair and just

Defendant American Funding demands a trial by Jury.

July 18, 2008

                            American Funding, Inc.

                            By: *s/ Carlton Odim*_____
                                Carlton Odim

Carlton Odim
Odim Law Offices
19 South LaSalle Street, Suite 1300
Chicago, Illinois 60603
(312) 578-9390
carlton@odimlaw.com