## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS RADCLIFF | ) | |
| | ) | |
| Plaintiff, | ) | 08 CV 1979 |
| | ) | |
| vs. | ) | |
| | ) | Judge Der-Yeghiayan |
| AMERICAN FUNDING, INC.; | ) | Magistrate Judge Brown |
| ENCORE CREDIT CORPORATION; | ) | |
| BEAR STERNS RESIDENTIAL | ) | |
| MORTGAGE CORPORATION; | ) | |
| LASALLE NATIONAL BANK | ) | |
| ASSOCIATION, AS TRUSTEE FOR | ) | |
| CERTIFICATEHOLDERS OF BEAR | ) | |
| STEARNS ASSET BACKED | ) | |
| SECURITIES I LLC, ASSET-BACKED | ) | |
| CERTIFICATES, SERIES 2007-HE7; | ) | |
| EMC MORTGAGE CORPORATION; | ) | |
| MORTGAGE ELECTRONIC SYSTEMS, | ) | |
| INC.; and DOES 1-5, | ) | |
| | ) | **JURY DEMAND** |
| Defendants. | ) | |

## AMENDED COMPLAINT

## INTRODUCTION

1.     Plaintiff brings this action against a "subprime" mortgage lender, its assignees and a mortgage broker to secure redress for predatory lending practices in violation of the federal Truth in Lending Act ("TILA") and TILA's implementing regulations, Regulation Z; the federal Real Estate Settlement Procedures Act ("RESPA") and RESPA's implementing regulations, Regulation X; the Illinois Consumer Fraud Act ("ICFA"); and common law.

## JURISDICTION AND VENUE

1

2.      This Court has subject matter jurisdiction under 28 U.S.C. Sects. 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental), 15 U.S.C. Sect. 1601, *et seq*. (TILA), and 12 U.S.C. Sect. 2601, *et seq*. (RESPA).

3.      Defendants transact business in the District and are deemed to reside here.

## PARTIES

4.      Plaintiff Dennis Radcliffe owns and resides in a home located at 13523 West Oakwood Court, Homer Glen, Illinois 60491.  He is an ordinary consumer.

5.      Defendant American Funding, Inc. ("American Funding") is an Illinois corporation with its principal offices at 5800-A North Lincoln Avenue, Chicago, IL, 60659.  It does business throughout the Chicago metro area.  It is engaged in the business of a mortgage broker.

6.      Defendant Encore Credit Corp. ("Encore") is or was a corporation chartered under the laws of California, with principal offices located at 1833 Alton Parkway, Irvine, CA, 92606.  It does business in Illinois.  Its registered agent and office are National Registered Agents, Inc., 200 West Adams, Chicago, Illinois, 60604.

7.      Encore is or was engaged in the business of originating sub-prime mortgage loans.  Encore originated more than 26 mortgage loans in 2007.  On information and belief, Encore is or was a subsidiary or affiliate of defendant Bear Stearns.

8.      Bear Stearns Residential Mortgage Corporation ("Bear Stearns") is a Delaware corporation that does business in Illinois.  It has corporate offices located at 9201 East Mountain View Road, Suite 210, Scottsdale, AZ, 85258.  Bear Stearns is engaged in the business of originating sub-prime mortgage loans.  It originated more than 26 mortgage loans in 2007.  On information and belief, Bear Sterns is the current beneficial owner of plaintiff's loan.

2

9.    Defendant LaSalle Bank National Association ("LaSalle"), as Trustee for Certificate Holders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE-7 is a national bank with headquarters located at 135 South LaSalle Street, Chicago, IL, 60603.  It does business in Illinois.  LaSalle is engaged in the business of holding title, as trustee, to subprime mortgage loans.  On information and belief, it is the current legal owner of plaintiff's loan.   LaSalle is now a subsidiary of Bank of America.

10.    Defendant Mortgage Electronic Registration Systems, Inc., ("MERS") is a Delaware corporation that does business in Illinois.  Its registered agent and office are CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, IL 60604.  It is engaged in the business of holding legal title to mortgages, as nominee.  It is named as a necessary party only.

11.    If LaSalle or Bear Stearns are not the present owners of plaintiff's loan, as alleged, the current actual owner(s) is/are named herein as Does 1-5.  Ownership of such loans is not a matter of public record.

### **FACTS**

12.    Prior to July 26, 2007, plaintiff phoned defendant American Funding in response to an advertisement the latter had run in the Chicago Sun-Times.

13.     Plaintiff's call was routed to "Lilly," who took information for a loan application and ran his credit.  Lilly then informed plaintiff that he qualified for a loan at an interest rate of 7.0% fixed for 30 years and that he would be able to draw out equity in the amount of $70,000 from the proceeds of the loan.

14.    Plaintiff sought a loan because he needed $70,000 in working capital for his business, a start-up bio-fuel company.

3

15.     Shortly after plaintiff's initial call, an appraiser came to plaintiff's home and performed an appraisal.  Several days later, plaintiff called Lilly to learn the results of the appraisal.  She told him that the appraisal came back at $581,000 and said, "We have plenty of equity."  Plaintiff asked a copy of the appraisal.  Lilly agreed, but one was never provided to plaintiff.

16.     Lilly and American Funding arranged for a loan from defendant Bear Stearns or Encore in the amount of $481,500.  (Page 2 of the HUD-1 Settlement Statement (Exhibit B) identifies defendant Bear Stearns as receiving some of the closing fees that would normally be received by the creditor, while page 1 of the HUD-1 and the Mortgage (Exhibit A) identify Encore as the lender.)

17.     Plaintiff needed and used the loan for personal, family and household purposes.

18.     Plaintiff never met Lilly in person.  Most of the time, she did not return his phone calls.

19.     Plaintiff received no preliminary disclosures whatsoever in the mail or by other means prior to the closing for the loan.  This included, but was not limited to, a Good Faith Estimate, a preliminary TILA Disclosure Statement and required disclosures relating to an adjustable rate loan program.

20.     Plaintiff also never received any notification of changes in the loan terms that Lilly quoted or promised him, as required by Illinois law.

21.     American Funding arranged for closing to occur on or about July 26, 2007.  The loan was closed in plaintiff's home, not at 6600 North Lincoln Avenue, as represented on the HUD-1 Settlement Statement (Exhibit B).  Lilly was not present.

22.    At closing, plaintiff noticed that the loan terms had changed.  He called Lilly but was told she was busy.  He also inquired of the closer, who told him "I'm just a closer."

23.    The loan closer, on information and belief an employee or other agent of Cambridge Title, did not provide plaintiff with any copies of any of the documents he signed at closing on or about July 26, 2007.  Plaintiff signed them, and the closer took them away.  The closer promised to mail, or have American Funding mail, a copy of the closing documents. Plaintiff never received any copies.

24.    At no time subsequently did any defendant ever provide plaintiff with a copy of any of the closing documents.

25.    Eight months later, in March, 2007, in response to plaintiff's third request for a copy of the documents he signed, Cambridge Title faxed to plaintiff poor-quality copies of: two pages of the recorded mortgage (Exhibit A); the HUD-1 Settlement Statement (Exhibit B); an Escrow Disbursement Agreement (Exhibit C); and an ALTA Loan and Extended Coverage Owners Policy Statement (Exhibit D).

26.    On information and belief, Cambridge Title contacted Lilly at American Funding assist plaintiff in getting a copy of the documents, and Lilly refused to cooperate.

27.    At no time was plaintiff ever provided with a TILA Disclosure Statement (preliminary or final) or with any copies of the federal Notice of Right to Cancel.

28.    Because plaintiff was not provided with any closing documents to keep, he did not have a meaningful opportunity to review, comprehend and deliberate on the terms of the loan he was promised and that he signed for.

29.    On information and belief, contrary to the terms promised Lilly and American Funding arranged for a "2/28" adjustable- rate loan with a starting interest rate of

10.15%.   The interest rate may increase beginning in August, 2009.  On the first change date,

the rate can increase to as high as 13.15%.  Thereafter, it can increase by as much as 1% in every

six-month period.  The rate can reach as high as 16.15%.

      30.    On information and belief, contrary to what was promised plaintiff only

actually received $19,356.48 in "cash out" from the transaction (Exhibit B, line 303).  This

affected plaintiff's business, which in turn affected his ability to pay the mortgage on his home.

      31.    The interest rate, the adjustable rate loan program, and the actual amount

of "cash out" were not disclosed to plaintiff.

      32.    Further, in addition to receiving $1,840 in direct broker compensation

from plaintiff, Lilly and American Funding also received $2,407.50 in additional compensation

in the form of a yield spread premium ("YSP") paid by Bear Stearns or Encore (Exhibit B).  The

YSP was paid and received for the purpose of increasing plaintiff's finance charge above the

finance charge that he qualified for, as determined by his objective credit qualifications.

      33.    Plaintiff was never informed by any defendant that, due to Bear Stearns'

or Encore's payment of a yield spread premiums to American Funding in connection with the

loan, plaintiff was assigned a higher interest rate than he qualified for, as alleged more fully

below.

      34.    No defendant ever explained to any plaintiff the meaning of the YSP.  No

defendant made plaintiff aware of the choice he had between interest rates or informed him that

the rate for the loan was negotiable.

      35.     The meaning of the YSP was material information for plaintiff.  Based

on plaintiff's credit, he could have obtained his mortgage loan at a significantly lower interest

rate if Bear Stearns or Encore and American Funding had not secretly agreed in advance of

closing to unnecessarily and artificially raise his interest rate and divide the spoils between them, as further explained below.

36.     Plaintiff qualified for better loan terms than he received from Lilly, American Funding and Bear Stearns or Encore.

37.     LaSalle has initiated a foreclosure action against plaintiff in Will County, Illinois.  It was unable to even attach a copy of the Promissory Note for the loan to its complaint; instead, it attached a "Lost Document Affidavit," which is legally insufficient.

38.     Subsequent to closing, servicing of the loan was transferred to EMC Mortgage Corporation.  As servicer, EMC claims certain rights in plaintiff's loan, including the right to receive payments, report to credit bureaus and to initiate or direct the initiation of foreclosure as a means of enforcing payment.  Although it is a necessary party, plaintiff counsel for Bear Stearns and Encore have reached an agreement under which plaintiff has dismissed EMC from this lawsuit without prejudice.

39.     The mortgage was in favor of defendant MERS.  As nominee, it holds title to plaintiff's mortgage and is, therefore, a necessary party.

40.      Subsequent to closing, Bear Stearns or Encore assigned ownership of the loan to LaSalle and Bear Stearns.  In the event LaSalle does not currently hold legal title to plaintiff's loan, as trustee, or that Bear Stearns is not the beneficial owner of plaintiff's loan, the actual owner(s) is/are named as Does 1-5.

41.     Because plaintiff still has not received copies of preliminary and final closing documents (except for the few attached to this complaint), plaintiff may seek leave to amend his complaint for a second time based upon documents and information he obtains for the first time through discovery.

7

## FACTS RELATING TO AGENCY

42.     At all times, Lilly was an agent of defendant American Funding.  Lilly was plaintiff's only contact for the loan subsequently arranged by American Funding.

43.     Further, Cambridge Title Company ("Cambridge Title"), a title company, was Bear Stearns' or Encore's closing agent for purposes of providing federally required loan disclosures.

44.     Bear Stearns or Encore delegated its federal legal duties to provide TILA and other disclosures to its closing agent.

45.      Bear Stearns or Encore had a written agreement with its agent and provided it with specific written closing instructions, including instructions for the provision of TILA disclosures.

46.     Bear Stearns or Encore compensated Cambridge Title for this and other closing services it provided in connection with plaintiff's loan.

47.     Moreover, for the reasons set forth below, at all times American Funding was an agent of Bear Stearns or Encore.


48.     All of plaintiff's discussions and communications about the terms of his loan from Bear Stearns or Encore were with American Funding.  All representations made to plaintiff concerning the terms of the Bear Stearns or Encore loan were made by American Funding.  Though Bear Stearns or Encore made the loan, plaintiff dealt exclusively with Lily and American Funding.

49.    As noted, Bear Stearns or Encore paid the "yield spread premium" ("YSP") to American Funding exclusively or  primarily in exchange for the latter's agreement to increase plaintiff's interest rate above the "par" rate that he actually qualified for.

50.    To this end, Bear Stearns or Encore provided American Funding with information about the former's broker-compensation policies, including its formulas for calculating additional broker compensation that corresponded to increases in the interest rate obtained by the broker.  These policies gave American Funding the general and specific financial incentive to arrange plaintiff's loan and to increase plaintiff's interest rate.

51.    In this manner, Bear Stearns or Encore authorized American Funding and gave it specific discretion to increase the interest rate on plaintiff's Bear Stearns or Encore loan.

52.    Because of American Funding's interest rate mark-up, Bear Stearns or Encore received additional income and profit from plaintiff's loan.

53.    On information and belief, American Funding directed some or all of the YSP payment to Lilly as additional compensation for arranging the loan.

54.    Bear Stearns' or Encore's policies also authorized American Funding to charge certain amounts to plaintiff in borrower-paid broker fees, such as application and processing fees.  American Funding received these and other fees from plaintiff.

55.    In addition, on information and belief, Bear Stearns or Encore and American Funding had a written agreement to do business with each other.  Bear Stearns or Encore contracted with American Funding in order to find prospective borrowers.

56.    Pursuant to that agreement, Bear Stearns or Encore authorized American Funding to broker or arrange mortgage loans on Bear Stearns' or Encore's behalf.

9

57.     Pursuant to the agreement, a significant number of loans brokered by American Funding were placed with Bear Stearns or Encore.

58.     Pursuant to the agreement, Bear Stearns or Encore authorized American Funding to accept applications on its behalf, to quote financing rates and terms, to inform credit applicants of their financing options and to originate finance transactions, all by using Bear Stearns' or Encore's website, computer software and loan forms.

59.     Pursuant to the agreement, plaintiff's loan was arranged by American Funding in reliance on Bear Stearns' or Encore's credit-granting policies.

60.     As just one example, American Funding consulted and followed Bear Stearns' or Encore's "rate sheets" and/or "product sheets" in setting the terms of plaintiff's loan. This information was available to American Funding (and other Bear Stearns- Ecnore-authorized mortgage brokers) on Bear Stearns' or Encore's website, and, on information and belief, American Funding utilized that software to price plaintiff's loan.

61.     On information and belief, Bear Stearns or Encore also made its closing documents available to American Funding and its closing agent, Cambridge Title, on Bear Stearns' or Encore's website, as well as Bear Stearns' or Encore's training and instructions on its website for filling out such documents, and American Funding and Cambridge Title utilized those documents and instructions to arrange plaintiff's loan.

62.     On information and belief, American Funding and/or Cambridge Title prepared the documents necessary for plaintiff's loan from Bear Stearns or Encore.

63.     On information and belief, American Funding and/or Cambridge Title arranged for the closing of plaintiff's loans from Bear Stearns or Encore.

## COUNT I – TRUTH IN LENDING ACT – INDIVIDUAL CLAIM

64.    Plaintiff incorporates paragraphs 1-63.  This count is against Encore, Bear

Stearns and Does 1-5.  MERS, as nominee, is named as a necessary party only.

## RIGHT TO RESCIND

65.    Because the transaction was secured by plaintiff's home, and was not

entered into for purposes of the initial acquisition or construction of that home, it was subject to

the right to cancel provided by 15 U.S.C. Sect. 1635 and 12 C.F.R. Sect. 226.23.  Sect. 226.23

provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer**

entitled to rescind. **The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

66.    In connection with the loan, Encore and/or Bear Sterns or its agent failed to provide plaintiff with any financial disclosures whatsoever, in violation of 15 U.S.C. Sect. 1637, 12 C.F.R. Sect. 226.18 and the corresponding sections of the Official Federal Reserve Board ("FRB") Commentary on Regulation Z.  Defendants did not provide plaintiff with a preliminary or a final TILA Disclosure Statement.

67.    In addition, defendants failed to provide plaintiff with any federal Notice of Right to Cancel forms, in violation of 12 C.F.R. Sect. 226.23(b) above.

68.    Either violation alone is sufficient to confer on plaintiff the extended, three-year right to rescind the loan.

69.    Plaintiff sent notification to defendants of his intent to rescind the loan (<u>Exhibit E</u>).

70.    The loan has not been rescinded.

71.    Under 15 U.S.C. Sect. 1641(c), the right to rescind may be exercised against "any assignee."

72.    In addition, 15 U.S.C. Sect. 1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.    A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

b.    Statutory damages for the underlying violations;

c.    Actual damages plaintiff suffered for defendants' failure to disclose the terms of the loan;

d.    If appropriate, statutory damages for failure to rescind;

e.    Attorney's fees, litigation expenses and costs; and

f.    Such other or further relief as the Court deems appropriate.

## <u>COUNT II - ILLINOIS CONSUMER FRAUD ACT</u>

73.    Plaintiff incorporates paragraphs 1-63.  This claim is against American Funding, Bear Stearns and Encore.

13

74.     As Bear Stearns' or Encore's agent, American Funding's conduct toward plaintiff is attributable to Bear Stearns or Encore.

75.     Defendants violated §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by engaging unfair and/or deceptive practices and conduct toward plaintiff, including but not limited to the following.

76.     Defendants engaged in bait-and-switch sales tactics with respect to the terms of plaintiff's loan.

77.     Defendants misrepresented or concealed the loan terms plaintiff would receive.

78.     To realize more profit, defendants secretly agreed among themselves to increase the interest rate on plaintiff's loan – by means of the payment and acceptance of the YSP - above the interest rate he qualified for, based on his credit qualifications, and did not explain or disclose the increase to plaintiff.

79.     This unfair and deceptive conduct was facilitated by defendants not providing any (a) preliminary disclosures of the loan terms, including the adjustable rate feature of the loan (b) written notification of a change in loan terms, including but not limited to the amount of "cash out" plaintiff would actually receive or (c) copies of the closing documents plaintiff signed, so that he could have an opportunity to review and study the loan terms either prior to closing or within the three-day, federal rescission period following closing.

80.     Disclosures were not provided so that plaintiff would not cancel the transaction either before or after closing.

81.     Bear Stearns or Encore, American Funding and Lilly received greater profits from plaintiff's transaction because they increased the interest rate beyond what plaintiff qualified for and/or because they put him in an adjustable rate loan program.

82.     Defendants engaged in such conduct in the course of trade and commerce.

83.     Defendants engaged in such conduct with the intent that plaintiff rely on its deception.

84.     Defendants engaged in such conduct with the intent to injure plaintiff.

85.     Plaintiff was damaged as a result.

86.     Defendants' conduct caused plaintiff's injuries.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.     Compensatory, actual, punitive and other appropriate damages;

b.     Attorney's fees, litigation expenses and costs.

c.     Such other or further relief as the Court deems appropriate.

## COUNT III – RESPA

87.     Plaintiff incorporates paragraphs 1-63.  Plaintiff brings this count against defendants Bear Stearns, Encore and American Funding.

88.     Plaintiff's loan from Bear Stearns or Encore was a federally-related mortgage loan, within the meaning of the Real Estate Settlement Procedures Act ("RESPA").

89.     On information and belief, Bear Stearns or Encore paid American Funding the YSP in exchange for increasing plaintiff's interest rate and/or for steering or referring mortgage business to Bear Stearns or Encore, not for other goods and services actually rendered. The YSP was an illegal kickback or unearned fee.

15

90.   Alternatively, the YSP payment did not bear a reasonable relationship to the market value of any goods or services actually provided by American Funding.

91.   On information and belief, Bear Stearns or Encore and American Funding illegally split the additional compensation earned from the transaction as a result of the YSP with each other.

92.   On information and belief, these referral arrangements and transactions were not disclosed to plaintiff, and plaintiff was not provided with any written estimate of the charge or charges of the defendant(s) to which plaintiff was referred.

93.    Defendants' secret agreements to engage in this conduct were oral and written.

94.   Defendants' conduct violated 12 U.S.C. Sect. 2607(a) and/or (b) and 24 C.F.R. 3500.14(b) (Regulation X).

95.   Plaintiff is entitled to the statutory and treble damages provided for by 12 U.S.C.Sect.2607(d).

WHEREFORE, plaintiff requests that the Court enter judgment in their favor and against defendants for:

a.   Statutory damages

b.   Attorney's fees, litigation expenses and costs of suit; and

c.   Such other or further relief as the Court deems proper.

## COUNT IV – NEGLIGENT MISREPRESENTATION

96.   Plaintiff incorporates paragraphs 1 – 63.  Plaintiff brings this count against all Bear Stearns or Encore and American Funding.

97.     In the alternative, defendants negligently misrepresented the appraised value/available equity, the amount of cash out, the interest rate and other loan terms to plaintiff.

98.     Defendants also negligently failed to provide plaintiff with the required, preliminary written disclosures, written notification of change in loan terms, and closing documents disclosing the final loan terms.

99.     Defendants did not correctly or accurately represent and explain the terms of the loan to plaintiff.

100.     Defendants made the negligent misrepresentations detailed above in their business or professional capacities.  All of the misrepresentations were made in a commercial setting and directly to plaintiff.

101.     In making the misrepresentations, defendants breached their duty to plaintiff to accurately represent, describe and explain the terms of the loan, thereby failing to take precautions against creating an unreasonable risk of injury from foreseen and foreseeable events, such as hurting plaintiff's business, diminishing his ability to afford the monthly payments, the event of mortgage default and other financial injuries to plaintiff.

102.     As a result of defendants' negligent misrepresentations, plaintiff suffered damages and continues to suffer damages.

103.     Defendants' negligent misrepresentations caused plaintiff's injuries.

104.     Plaintiff justifiably relied on defendants' misrepresentations.  Defendants knew or could contemplate or foresee that plaintiff would rely on their negligent misrepresentations.

105.     Defendants' conduct was wanton and willful, reckless and malicious.

Wherefore, plaintiff prays for actual and compensatory damages, the reasonable cost of repair of his damages, punitive damages, equitable relief, and any other or further relief that the Court deems just.

## COUNT V - BREACH OF FIDUCIARY DUTY

106.    Plaintiff incorporates paragraphs 1-63.  This claim is against defendant Funding.

107.    One who undertakes to find and arrange financing for another becomes the latter's agent for that purpose and owes a fiduciary duty to act in the interest of the principal and make full disclosure of all material facts that might affect the principal's decision.

108.    American Funding undertook to serve as plaintiff's mortgage broker.

109.    As set forth above, plaintiff entrusted matters to American Funding to handle on his behalf and authorized it to act in his best interest and for his benefit.

110.    American Funding voluntarily accepted that charge and undertook to manage plaintiff's mortgage financing transaction.

111.    Explicitly or implicitly, American Funding represented to plaintiff that it would find or arrange for plaintiff the best deals on financing that it could.

112.    In addition, American Funding had a written, agency agreement with plaintiff that granted to it the exclusive right to serve as plaintiff's agent for purposes of arranging mortgage financing.

113.    Pursuant to that agreement, American Funding had the authority to act and did act to affect the legal rights of plaintiff.

114.    American Funding breached its fiduciary duty to plaintiff by: failing to disclose material information about the loan terms to plaintiff; making affirmative

18

misrepresentations to plaintiff about the loan terms and the supposed benefits of refinancing; overcharging plaintiff; increasing plaintiff's interest rate in exchange for the YSP and not explain or clearly disclosing the same; failing to provide plaintiff with written disclosures before, during and after closing; and by otherwise engaging in conduct that was fraudulent or negligent and directly adverse to the interests of plaintiff.

115.    American Funding intentionally or negligently disregarded the interests of plaintiff and acted purely or primarily for their its own financial benefit.

116.    Plaintiff was injured and damaged as a result.

117.    American Funding's conduct was deliberately oppressive, corrupt and dishonest.  Substantial punitive damages are warranted.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:  compensatory, punitive and other appropriate damages; equitable relief; costs; and such other or further relief as the Court deems appropriate.

## <u>COUNT VI - INDUCMENT OF BREACH OF FIDUCIARY DUTY</u>

118.    Plaintiff brings this count against defendant Bear Stearns or Encore. Plaintiff incorporates paragraphs 1-63.

119.    Defendant induced a breach of fiduciary duty by American Funding through its policy and act of paying a YSP in exchange for the American Funding's cooperation in unnecessarily inflating plaintiff's interest rate.

120.    Defendants intended for its authorized brokers, such as American Funding, to raise the interest rates of its borrowers, such as plaintiff.

121.    Defendants' promise of additional compensation for American Funding was inducement for the latter to breach its fiduciary duty to plaintiff.

122.    American Funding did in fact breach its fiduciary duty to plaintiff, as alleged.  It did so in exchange for and because of the YSP payment from Bear Stearns or Encore.

123.    Bear Stearns or Encore knew that this would be the effect of its policy of paying YSPs and, specifically, of paying the YSP to American Funding in plaintiff's transaction.

124.    Plaintiff was damaged as a result.

125.    Defendants' inducement of American Funding to breach its fiduciary duty to plaintiff resulted in the damages to plaintiff.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:  compensatory, punitive and other appropriate damages; equitable relief; costs; and such other or further relief as the Court deems appropriate.


Respectfully submitted,


s/Al Hofeld, Jr.
Al Hofeld, Jr.


Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project,
208 S. LaSalle Street, Suite #1650
Chicago, Illinois  60604
Phone - (312) 345-1004
Fax - (312) 346-3242
al@alhofeldlaw.com


## JURY DEMAND

Plaintiff demands trial by jury.

<u>s/Al Hofeld, Jr.</u>
Al Hofeld, Jr.

## <u>NOTICE OF LIEN</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such

amount as a court awards.

<u>s/Al Hofeld, Jr.</u>

Al Hofeld, Jr.


Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Project for Social Justice, Inc.
208 S. LaSalle Street, Suite #1650
Chicago, Illinois 60604
Phone - (312) 345-1004
Fax – (312) 346-3242
al@alhofeldlaw.com


## NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

  I, Al Hofeld, Jr., attorney for plaintiff, hereby certify that on August 12, 2008, filing and service of the foregoing ***Amended Complaint,*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

        s/Al Hofeld, Jr.
       Al Hofeld, Jr.

1

# EXHIBIT A

Return To:

Encore Credit
1833 Alton Parkway
Irvine, CA 92606

Prepared By:

Encore Credit
2211 Butterfield Road, Ste. 100
Downers Grove, IL  60515

LAURIE MCPHILLIPS 19P  R 2007135765
Will County Recorder    Page 1 of 19

LMR Date 09/11/2007    Time 12:00:30
Recording Fees:                  39.75
IL Rental Hsng Support Prog:     10.00

CAMBRIDGE TITLE COMPANY
400 Central Avenue
Northfield, IL 60093

07-1554

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 100386100002940120

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 26, 2007
together with all Riders to this document.
(B) "Borrower" is DENNIS RADCLIFF  UNMARRIED MAN.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
20823779                                                                                        20823779
ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(IL) (0010).02                                                                                 Form 3014  1/01
Page 1 of 15                         Initials:
VMP Mortgage Solutions, Inc.

1of19

(D) "Lender" is Encore Credit

Lender is a Corporation
organized and existing under the laws of The State of Delaware
Lender's address is 2211 Butterfield Road, Ste. 100, Downers Grove, IL  60515

(E) "Note" means the promissory note signed by Borrower and dated July 26, 2007
The Note states that Borrower owes Lender Four Hundred Eighty One Thousand Five
Hundred And Zero/100                                                          Dollars
(U.S. $481,500.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 01, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

20823779                                                            20823779

-6A(IL) 0010.02                        Page 2 of 15                        Form 3014  1/01

# EXHIBIT B

MAR. 19. 2008 11:26AM    CAMBRIDGE TITLE      NO. 201   P. 5

## A. SETTLEMENT STATEMENT

### U.S. Department of Housing and Urban Development

OMB No. 2502-0265

**B. Type of Loan**

| 1. __ FHA | 2. __ RHS | 3. __ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. __ VA | 5. __ Conv. Ins. | | 07-1554 | 20823779 | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (P.O.C.) were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| DENNIS RADCLIFF | | EMCORE CREDIT |
| 13523 WEST OAKWOOD COURT | | 2211 BUTTERFIELD ROAD STE.#100 |
| HOMER GLEN, IL 60491 | | DOWNERS GROVE, IL 60515 |

| G. Property Location | H. Settlement Agent |  |
|---|---|---|
| 13523 OAKWOOD COURT | CAMBRIDGE TITLE COMPANY | |
| HOMER GLEN, IL 60491 | Place of Settlement | I. Settlement Date |
| | 6600 N. LINCOLN AVE. | 07/26/07 |
| | LINCOLNWOOD, IL 60712 | DD: 07/31/07 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 3,746.06 | 403. | |
| 104. PAYOFF WASHINGTON MUTUAL | 458,397.46 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes    to | | 406. City/town taxes    to | |
| 107. County taxes    to | | 407. County taxes    to | |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 462,143.52 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. Amounts Paid By or in Behalf of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 481,500.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes    to | | 510. City/town taxes    to | |
| 211. County taxes    to | | 511. County taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 481,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. Cash At Settlement From or To Borrower** | | **600. Cash At Settlement To or From Seller** | |
| 301. Gross amount due from borrower (line 120) | 462,143.52 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 481,500.00 | 602. Less reduction amount due seller (line 520) | |
| **303. CASH    TO    BORROWER** | 19,356.48 | **603. CASH    TO    SELLER** | 0.00 |

U.S. MAR. 19. 2008 11:26AM AND UP CAMBRIDGE TITLE     NO. 201   P. 4

## L. SETTLEMENT CHARGES:

| | FILE #: 07-1564 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | | @ = | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | P.O.C. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee | % | | | |
| 802. Loan Discount | % | | | |
| 803. Appraisal Fee | to | | 10.00 | |
| 804. Credit Report | to AMERICAN FUNDING | | | |
| 805. Lender's Inspection Fee | to | | | |
| 806. Mtg. Ins. Application Fee | to | | | |
| 807. | to | | 500.00 | |
| 808. UNDERWRITING FEE | ENCORE CREDIT | | 850.00 | |
| 809. PROCESSING FEE | AMERICAN FUNDING | | | |
| 810. YIELD SPREAD PREMIUM | $2407.50 POC TO AMERICAN FUNDING | | | |
| 811. BROKER APPLICATION FEE | AMERICAN FUNDING | | 850.00 | |
| 812. COURIER FEE | AMERICAN FUNDING | | 65.00 | |
| 813. TAX SERVICE FEE | BEAR STEARNS RESIDENTIAL MORTGAGE | | 46.00 | |
| 814. FLOOD CERT FEE | ENCORE CREDIT | | 7.00 | |
| 815. ADMINISTRATIVE FEE | BEAR STEARNS RESIDENTIAL MORTGAGE | | 475.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest from 07/31/07 to 08/01/07 @ $ 133.8966 /day 1 Days | | | 133.90 | |
| 902. Mortgage Insurance Premium for to | | | | |
| 903. Hazard Insurance Premium for 2 MON yrs to AMERICAN FAMILY INSURANCE | | | 290.16 | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | | |
| 1001. Hazard Insurance | mo.@$ /mo. | | | |
| 1002. Mortgage Insurance | mo.@$ /mo. | | | |
| 1003. City property taxes | mo.@$ /mo. | | | |
| 1004. County property taxes | mo.@$ /mo. | | | |
| 1005. Annual Assessments | mo.@$ /mo. | | | |
| 1006. | mo.@$ /mo. | | | |
| 1007. | mo.@$ /mo. | | | |
| 1008. | | | | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or closing fee | to | | | |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | | | |
| 1105. Document preparation | to | | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | | | |
| (includes above items No: ) | | | | |
| 1108. Title Insurance | to CAMBRIDGE TITLE COMPANY | | 560.00 | |
| (includes above items No: ) | | | | |
| 1109. Lender's coverage $ 481,500.00 ---- 560.00 | | | | |
| 1110. Owner's coverage $ | | | | |
| 1111. EPA ENDORSEMENT | | | | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording fees Deed $ Mortgage $ Releases $ 0.00 | | | | |
| 1202. City/county/stamps Deed $ Mortgage $ | | | | |
| 1203. State tax/stamps Deed $ Mortgage $ | | | | |
| 1204. CITY OF CHICAGO Deed $ Mortgage $ | | | | |
| 1205. ASSIGNMENT OF MORTGAGE RECORDING FEE | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey to | | | | |
| 1302. Pest Inspection to | | | | |
| 1303. RENTAL HOUSING SURCHARGE WILL COUNTY RECORDER | | | | |
| 1304. | | | 10.00 | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103 and 502, Sections J and K) | | | 3,746.98 | 0.00 |

Dennis Radcliff

Maria C. Radle

07-26-07

# EXHIBIT C

# CAMBRIDGE TITLE COMPANY
### 400 CENTRAL AVENUE
### NORTHFIELD, IL 60093
### (847) 446-3000

## ESCROW DISBURSEMENT AGREEMENT

**BUYERS: DENNIS RADCLIFF**        **SELLERS:**

**PROPERTY ADDRESS:**    **13523 WEST OAKWOOD COURT, HOMER GLEN, IL 60491**

We the Buyer direct you to make disbursements for this transaction pursuant to the attached HUD-1 Settlement Statement.

We understand and agree that CAMBRIDGE TITLE COMPANY is only acting as agent for the lending institution, and does not represent either the Seller or the Buyer as an attorney or in any other way.

We understand that if this statement is signed by an attorney, the attorney affirmatively warrants that he/she has the authority to receive copies of the attached Settlement Statement to the attorney is delivery to his client.

The Buyer directs you to make the disbursements only when CAMBRIDGE TITLE COMPANY is able to issue an ALTA owners title policy insuring the fee simple title of the Buyer, subject only to the following: (a) general real estate taxes for 2006 and subsequent years; (b) special exceptions Schedule B (); (c) the mortgage made by the Buyer in this transaction. The Buyer will pay the $0 escrow fee for this service.

The parties, if requested by CAMBRIDGE TITLE COMPANY, will promptly cooperate and adjust for clerical errors, any documents executed as part of this transaction.

In order to induce CAMBRIDGE TITLE COMPANY to accept the deposit of uncertified funds for the closing of this transaction, the party wishing to make the deposit of uncertified funds hereby indemnifies and holds harmless CAMBRIDGE TITLE COMPANY for all loss or damage, including reasonable attorneys' fees expended in enforcing its rights under said indemnification and hold harmless, sustained by reason of CAMBRIDGE TITLE COMPANY accepting said uncertified funds.

Sellers/Owners                        Buyers

_____        _____

_____        _____

**Date:  July 26th, 2007**

# EXHIBIT D

# CAMBRIDGE TITLE COMPANY

### 6600 LINCOLN AVE., SUITE 200, LINCOLNWOOD, IL 60712
### (847) 410-0430 • FAX (847) 410-0436

### ALTA LOAN AND EXTENDED COVERAGE OWNERS POLICY STATEMENT

Commitment No.: _____      Date: _____

The undersigned hereby certifies with respect to the land described in the above commitment:

1.    That, to the best knowledge and belief of the undersigned, no contracts for the furnishing of any labor or material to the land or the improvements thereon, and no security agreements or leases in respect to any goods or chattels that have or are to become attached to the land or any improvements thereon as fixtures, have been given or are outstanding that have not been fully performed and satisfied; that there are no unrecorded contracts to purchase the land; and that there are no unrecorded leases to which the land is subject, except as listed below, and that if any leases are listed below, they contain no options to purchase, rights of renewal, or other unusual provisions, except as noted below (no leases or contracts, state "none").

_____

(Use back page hereof if necessary)

2.    That, in the event that the undersigned is a mortgagor in a mortgage to be insured under a loan policy to be issued pursuant to the above commitment, the mortgage and the principal obligations it secures are good and valid and free from all defenses; that any person purchasing the mortgage and the obligations it secures, or otherwise acquiring any interest therein, may do so in reliance upon the truth of the matters herein recited; and that this certification is made for the purpose of better enabling the holder or holders, from time to time, of the above mortgage and obligations to sell, pledge or otherwise dispose of the same freely at any time, and to insure the purchasers or pledgees thereof against any defenses thereto by the mortgagor or the mortgagor's heir, personal representative or assigns.

The undersigned makes the above statements for the purpose of inducing Cambridge Title Company to issue its owners or loan policy pursuant to the above commitment.

| I N D I V I D U A L | Seller or Owner | I N D I V I D U A L | Purchaser |
|---|---|---|---|
| | _____ | | *Dennis Radcliff* |
| | _____ | | _____ |
| C O R P O R A T I O N | IN WITNESS WHEREOF, _____ | C O R P O R A T I O N | IN WITNESS WHERE OF, _____ |
| | _____ has caused these presents to be | | _____ has caused these presents to be |
| | signed by its _____ President and attested by its _____ | | signed by its _____ President and attested by its _____ |
| | Secretary under its corporate seal on the above date. | | Secretary under its corporate seal on the above date. |
| | By: _____ President | | By: _____ President |
| | Attest: _____ Secretary | | Attest: _____ Secretary |
| T R U S T E E | The above statements are made by _____ | T R U S T E E | The above statements are made by _____ |
| | _____ | | _____ |
| | not personally but as Trustee under the trust agreement | | not personally but as Trustee under the trust agreement |
| | known as Trust No. _____, on the above written authority | | known as Trust No. _____, on the above written authority |
| | and direction of the beneficiaries under the trust. | | and direction of the beneficiaries under the trust. |
| | _____ Seal | | _____ Seal |

I/We certify that no survey was furnished to me/us and none is available.

                                           _____

                                           Purchaser(s)

**LENDER'S DISBURSEMENT STATEMENT**

The undersigned hereby certifies that the proceeds of the loan secured by the mortgage to be insured under the loan policy to be issued pursuant to the above commitment were fully disbursed to or on the order of the mortgagor on _____; and, to the best knowledge and belief of the undersigned, the proceeds are not to be used to finance the making of future improvements or repairs on the land. You are hereby authorized to date down the above commitment to cover the date of said disbursement.

_____          _____

# EXHIBIT E

**LAW OFFICES OF AL HOFELD, JR., LLC**
**208 S. LaSalle Street, Suite #1650**
**Chicago, Illinois  60604**
**Phone - 312-345-1004**
**Fax - 312-346-3242 (FAX)**
**Email:  al@alhofeldlaw.com**

March 31, 2008

**BY REGULAR MAIL:**

EMC Mortgage Corporation
2780 Lake Vista Drive
Lewisville, TX 75029-3150

Performance Credit Corporation,
f/k/a Encore Credit
1833 Alton Parkway
Irvine, CA 92606

**BY HAND DELIVERY:**

EMC Mortgage Corporation
C/o CT Corporation System,
208 South LaSalle Street, Suite 814
Chicago, IL 60604

Performance Credit Corporation,
f/k/a Encore Credit
C/o National Registered Agents, Inc.,
200 West Adams,
Chicago, IL 60604

Mortgage Electronic Registration Systems, Inc.
C/o registered agent,
CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, IL 60604

> Re:    Notice of TLA rescission, claim and lien for Dennis Radcliff, 13523
> West Oakwood Court, Home Glen, IL 60491; loan of July 26, 2007,
> originated by Encore Credit

Ladies/Gentlemen:

1

The above client hereby gives notice that he rescinds the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above client to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to your obligation under 15 U.S.C. §1641(f)(2).

Finally, please provide a complete account history so that we may compute the appropriate tender amount.

Sincerely,

Al Hofeld, Jr.

Cc:    client

Richard M. Rosenbaum
Pierce & Associates
1 North Dearborn
Chicago, IL 60602

2

I, Al Hofeld, Jr., under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the listed addressees on March 31, 2008.

Al Hofeld, Jr.